United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ITALIA MARITTIMA, S.P.A.,

    Plaintiff,

    v.

SEASIDE TRANSPORTATION
SERVICES, LLC, et al.,

    Defendants.
_____/

No. C 10-0803 PJH

**ORDER RE MOTIONS TO DISMISS**

Defendants' motions to dismiss came on for hearing before this court on June 16, 2010. Plaintiff Italia Marittima, S.p.A. ("Italia") appeared by its counsel John E. Holloway and Paul L. Gale. Defendants Marine Terminals Corporation ("MTC") and Tricor Services, LLC ("Tricor") appeared by their counsel Gary Angel. Defendant Seaside Transportation Services, LLC ("Seaside") appeared by its counsel Dena S. Aghabeg. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES Tricor's motion, and GRANTS MTC's motion and Seaside's motion as follows.

**BACKGROUND**

This is a maritime case alleging breach of contract and negligence. Plaintiff Italia is an Italian ocean liner carrier, whose principal place of business is in Trieste, Italy. MTC performs stevedoring services at the Ben E. Nutter Terminal in the Port of Oakland,

California.  Seaside is an assignee of an agreement between Italia and MTC.  Tricor entered into a contract with Seaside to provide computer support services on behalf of Seaside.

Yang Ming Marine Transport Corp. ("Yang Ming") time-chartered (leased) the M/V Med Taipei ("the Vessel") to Italia (which prior to March 1, 2006 was known as "Lloyd Triestino Di Navigazione S.p.A" – referred to herein as "Lloyd Triestino").  The terms of the time-charter agreement required Italia to provide stevedoring services, to include stowage planning and the loading and securing of containers on the Vessel.

On May 15, 2001, Lloyd Triestino entered into an agreement for Stevedoring and Terminal Services ("the Terminal Agreement") with MTC for services at a Marine Container Terminal in the Port of Oakland.

Among other things, the Terminal Agreement required MTC to perform stevedoring services for the Vessel in an efficient and workmanlike manner, to plan unloading/loading sequences of containers in accordance with the inbound stowage sheet, to furnish appropriate stowage plans, to load and stow any cargo onto the Vessel, and to lash and unlash containers stowed on or under the deck of the Vessel.  The Agreement also had an arbitration clause, which (according to Italia) the parties agreed to waive.

On February 12, 2004, Italia and MTC agreed that effective August 2, 2003, MTC would assign all of its rights and duties under the Terminal Agreement to Seaside ("the Assignment").  Specifically, the Assignment stated that "[a]ll the terms, conditions, and rights of the agreement would then be between Lloyd Tiestino di Navigatione, S.P.A. and Seaside Transportation Services, LLC."

Also on August 2, 2003, Seaside subcontracted the stevedoring work back to MTC (the "Seaside/MTC" contract); and Seaside and Tricor entered into an "Operation Support Services Agreement," pursuant to which Tricor agreed to provide vessel stowage services to Seaside for the benefit of Seaside and its clients – including the creation of loading plans, and the monitoring of the Vessel during operation to make any necessary changes (the "Seaside/Tricor" contract).

Italia asserts that it was a third-party beneficiary of both the Seaside/MTC and the Seaside/Tricor contracts.

On February 24, 2004, the Vessel called at the Port of Oakland to load and discharge cargo. Pursuant to the Terminal Agreement, Seaside (as assignee) was to provide stowage planning and stevedoring services to the Vessel. By that time, MTC and Tricor had previously loaded and prepared stowage plans for the Vessel on several occasions during the preceding 10 months. Thus, according to Italia, MTC and Tricor should have been familiar with the Vessel.

On February 24, 2004, MTC (using stowage plans provided by Tricor) loaded 27 containers onto the Vessel which already held containers previously loaded in China. The following day, February 25, 2004, the Vessel sailed from Oakland en route to Long Beach, California, with 1,314 containers on board.

On February 26, 2004, the Vessel encountered heavy weather. According to Italia, because certain container stacks loaded by MTC were overloaded and improperly secured, those container stacks collapsed. This caused some containers to fall into the Pacific Ocean and damaged other containers that slipped but did not fall into the Pacific Ocean. In addition, the Vessel was damaged.

Italia alleges that Seaside and MTC loaded the Vessel in accordance with Tricor's stowage plans, and that they overloaded the container stacks by exceeding maximum allowances, loading stacks in excess of the designated weight limits, and stowing containers with a vertical weight distribution likely to subject the containers and securing/lashing equipment to forces in excess of the maximum allowable forces under the applicable Class (ABS) rules. In addition, Italia asserts that Seaside and MTC failed to properly lock twist locks and properly adjust lashing equipment.

Italia alleges that Seaside and MTC implemented improper stowage plans prepared by Tricor even though it knew or should have known that the stowage configuration was probably unsafe and likely to violate industry standards for safe stowage of containers.

Italia asserts that the loss of and damage to the containers, and the damage to the

Vessel, were caused by the negligent failure of Seaside, MTC, and Tricor to prepare and execute a proper stowage plan and to properly load and secure the containers on the Vessel.

On June 9, 2004, an underwater research vehicle conducting a seafloor survey in Monterey Bay, California, discovered a 40-foot container resting at a depth of 1281 meters, within the boundaries of the Monterey Bay Marine Sanctuary ("the Sanctuary"). This container was one of the containers that had been lost overboard on February 26, 2004. The container reportedly weighed 14.4 tons and contained passenger car tires.

Because the container was located in the Sanctuary, the National Oceanographic and Atmospheric Administration ("NOAA") claimed damages, including environmental remediation and civil penalties pursuant to the National Marine Sanctuaries Act, 16 U.S.C. § 1341, et seq. ("the Act"). NOAA also threatened to require removal of all fifteen containers lost within the Sanctuary ("the NOAA claim").

Italia asserts that Seaside, MTC, and Tricor were aware, or should have been aware, that the Vessel would traverse within the boundaries of the Sanctuary, and that any loss of containers would result in damages and imposition of civil penalties under the Act.

Italia also asserts that NOAA's experts calculated that provable damages, including environmental "loss of services" was valued at approximately $12 million. NOAA also asserted an entitlement, in addition to the claim for damages, to levy a fine on Italia and Yang Ming of up to $119,000 per day for the fifteen containers.

On March 18, 2005, counsel for Italia advised Mr. Angel, counsel for MTC and Tricor, of the claim made by NOAA. In a letter to Italia's counsel dated May 4, 2005, Mr. Angel asserted that the NOAA release should include Yang Ming, Lloyd Triestino (Italia), MTC, Seaside, and Tricor as released parties. In a letter back to Mr. Angel dated August 23, 2005, Italia's counsel reported the status of negotiations with NOAA, and specifically offered MTC and Tricor the right to take over the defense of the NOAA claim.

Italia and Yang Ming eventually reached a settlement with the United States, and jointly settled the NOAA claim for payment of $3.250 million ("the NOAA settlement"). This

4

payment was in settlement of both the claim for damages and the civil penalties. A Consent Degree memorializing the settlement was entered by the U.S. District Court for the Northern District of California on September 26, 2006. The Consent Decree included a covenant by the United States not to sue any of a long list of "interested parties," including Italia, MTC, Seaside, and Tricor.

Italia claims to have suffered damages in excess of $7 million. These damage include the NOAA settlement, costs and expenses in connection with the NOAA settlement, expenses of an arbitration brought by Yang Ming, settlement of cargo claims, losses arising out of the loss of the containers, and potential liability to Yang Ming for damage to the Vessel.

On December 6, 2006, Italia filed an arbitration claim against MTC, based on the arbitration clause in the May 15, 2001 Terminal Agreement. Italia asserted negligence and breach of contract and claimed damages of $2,227,959.55. On December 21, 2006, the parties agreed to stay the arbitration pending mediation. After the mediation failed, the arbitration resumed.

Italia claims that in late 2009, while reviewing documents in response to MTC's discovery requests, Italia's counsel discovered the 2003 assignment by MTC to Seaside of the May 15, 2001 Terminal Agreement. According to Italia, although the case had been in arbitration for three years, counsel for both parties were unaware of the assignment. Once the assignment was "discovered," the issue was brought to MTC's attention.

On November 16, 2009, MTC filed a motion to dismiss the arbitration, on the basis that no contractual relationship existed between Italia and MTC. In a response filed November 18, 2009, Italia acknowledged that MTC was not a proper party to the arbitration.

Italia filed the present action on February 25, 2010. In the first amended complaint ("FAC") filed on March 26, 2010, Italia asserts three causes of action. First, Italia alleges that Seaside (through the actions of its "subcontractors" MTC and Tricor) breached the Terminal Agreement (agreement between Italia and Seaside). Second, Italia alleges that

both MTC and Tricor breached their contracts with Seaside, with the result that Italia suffered damage as the third-party beneficiary of those two contracts. Third, Italia asserts a claim of negligence against Seaside, MTC, and Tricor.

Each of the three defendants now seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the claims asserted against it.

## DISCUSSION

A.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents fo the complaint. Allarcom Pay Television, Ltd. V. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the ground upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

B.  Tricor's Motion

Italia alleges two claims against Tricor, one for negligence and the other for breach of the Seaside/Tricor contract to which Italia claims to be a third-party beneficiary. Tricor argues that the claims are time-barred both by California's applicable statutes of limitations and by the maritime doctrine of laches. In response, Italia contends that maritime law, not California law, controls and that laches does not bar its claims.

Claims fall within admiralty jurisdiction when the alleged wrong bears a significant relationship to a traditional maritime activity, and has a maritime situs. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). Loading cargo is a traditional maritime activity. See American Stevedores, Inc. v. Porello, 330 U.S. 446, 456 (1947). The situs of a tort for purposes of determining admiralty jurisdiction is the place where the injury occurs. Taghadomi v. United States, 401 F.3d 1080, 1084 (9th Cir. 2005). Because its negligence claim against Tricor is based on Tricor's alleged improper stowage plan for the loading of cargo on the Vessel (a traditional maritime activity), and the injury suffered by Italia occurred in the Pacific Ocean (a maritime situs), the negligence claim is therefore a claim in admiralty, which is governed by the general maritime law.

Italia's breach of contract claim also falls within admiralty jurisdiction. The question whether a contract is maritime – and thus governed by the general maritime law – depends solely on the subject matter of the contract. Simon v. Intercont'l Transp. (ICT) B.V., 882 F.2d 1435, 1441 (9th Cir. 1989). Italia's third party beneficiary claim is based on a contract for a plan to load and stow cargo in a ship – which is a maritime contract. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 359 (1962).

Tricor's argument that California law should apply is unconvincing. Tricor does not dispute that the claims would ordinarily fall under admiralty jurisdiction, but instead asserts that under the choice-of-law provisions found in the Terminal Agreement and in the Seaside/MTC contract, California law preempts federal law. But Italia bases its claims against Tricor on the Seaside/Tricor contract, not on either of the other two contracts. Tricor does not assert, and has alleged no facts showing, that the contract in question

7

contains a choice-of-law provision akin to those found in the other two agreements. Consequently, maritime law governs Italia's claims against Tricor.

Absent a specific contractual or statutory provision, the equitable doctrine of laches dictates the timeliness of maritime claims. TAG/ICIB Servs., Inc., v. Pan American Grain Co., Inc., 215 F.3d 172, 175 (1st Cir. 2000); see also Puerto Rican-American Ins. Co. v. Benjamin Shipping Co. Ltd., 829 F.2d 281, 283 (1st Cir. 1987); Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980) ("[D]elay in bringing suit on an admiralty claim is barred by laches, not by any statute of limitations."); Hill v. W. Bruns & Co., 498 F.2d 565, 568 (2d Cir. 1974) ("In an admiralty suit state statutes of limitations are not strictly applied; instead, the doctrine of laches controls."). Because admiralty law contains no express statutes of limitations for claims of property damage (negligence) and breach of contract, laches controls the timeliness of Italia's claims against Tricor.

Unlike traditional limitations periods, a defense of laches is not necessarily triggered after a set number of years. Instead, the doctrine of laches requires a showing of both inexcusable delay and prejudice. See Stevens Technical Services, Inc. v. SS Brooklyn, 885 F.2d 584 (9th Cir. 1989); see also Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 839 (9th Cir. 2002).

In evaluating the reasonableness of the delay, courts often "borrow" the limitations period from the most closely analogous action under state law. Jarrow Formulas, 304 F.3d at 836. If the action is filed within the analogous period, there is a "strong presumption" that laches does not apply. Id. at 835. In contrast, if filed outside the relevant period, there is a presumption of unreasonable delay. Id.

California's analogous statutes of limitations are Cal. Civ. P. Code § 337 (four years for breach of contract) and Cal. Civ. P. Code § 338 (three years for negligence). Italia filed its claims nearly six years after the Incident. Nevertheless, in an admiralty suit, the timing of the action is not dispositive. Czaplicki v. The S.S. Hoegh Silvercloud, 351 U.S. 525, 533 (1956); Espino v. Ocean Cargo Line, Ltd., 382 F.2d 67, 68 (9th Cir. 1967). Instead, a laches inquiry is determined by the inequity of enforcing the claim under the circumstances.

8

Czaplicki, 351 U.S. at 533.

Whereas some older cases indicate that the plaintiff has the burden of disproving prejudice to the defendant when the analogous limitations period has run, see Kane v. Union of Soviet Socialist Republics, 189 F.2d 303, 305-07 (3rd Cir. 1951); Westfall Larson & Co. v. Allman-Hubble Tug Boat Co., 72 F.2d 200, 202 (9th Cir. 1934); a recent line of Ninth Circuit cases holds that irrespective of the timing, a defendant asserting laches must show that it "suffered prejudice as a result of plaintiff's unreasonable delay." Jarrow Formulas, 304 F.3d at 835.; Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1126 (9th Cir. 2006) ("[r]egardless of the applicable analogous statute of limitations, [defendant] still has the burden of proving prejudice from the delay.").

Nevertheless, even if the court were to assume Italia's delay was unreasonable, Tricor has not alleged that it has been prejudiced by the dilatory filing. Moreover, a laches determination is ill-suited for a motion to dismiss for failure to state a claim. Regardless of who bears the burden of proving or negating the laches defense, both sides should be allowed to discover and present evidence. Czaplicki, 351 U.S. at 534 (plaintiff should have "an opportunity to prove . . . that the delay has in no way prejudiced the [defendant]. These are questions on which the parties should have been allowed to present evidence."); Huseman, 471 F.3d at 1127 (generic statement of prejudice made without reference to any specific factual findings or determination cannot support a dismissal based on laches). Without a showing that Italia's delay prejudiced Tricor, laches cannot bar Italia's claims.

The court finds that Tricor's motion must be DENIED. The Seaside/Tricor contract does not provide for the application of California law. Thus, as this is a maritime action, the equitable doctrine of laches governs the timeliness of the actions. Regardless of which party bears the burden of proving or negating the elements of laches, the determination requires a finding of fact and cannot be resolved on a Rule 12(b)(6) motion to dismiss.

C.     MTC's Motion

Italia asserts two claims against MTC, one for negligently loading the Vessel and one for breaching the Seaside/MTC contract to which Italia argues it is a third-party

beneficiary. In response, MTC agues that the claims asserted against it are barred by res judicata and by the applicable statutes of limitations.

In its first main argument, MTC notes that the present claims against it are based on the same facts and incident as in the arbitration, where Italia alleged breach of contract and negligence. The arbitrators dismissed the claims asserted against MTC in November 2009, based on MTC's argument that no contractual relationship existed between MTC and Italia at the time of the February 2004 incident. MTC contends that because res judicata bars a party from asserting in another litigation an issue previously addressed in a prior action or arbitration (issue preclusion), or any other claim that could have or should have been brought in the prior action or arbitration (claim preclusion), the present claims of breach of contract and negligence are barred.

In the second argument, MTC, like Tricor, argues that California law applies and that the applicable statutes of limitations are Code of Civil Procedure § 338 (three years for negligence resulting in property damage) and Code of Civil Procedure § 337 (breach of written contract). Because six years elapsed between the February 2005 incident and the February 2005 filing of the present action, MTC argues the claims should be dismissed.

In opposition, Italia asserts that MTC's first argument fails because the arbitrators lacked jurisdiction, since there was no arbitration agreement between the parties, and because they never decided the case on the merits. Italia contends that MTC's second argument fails for the same reason that Tricor's argument fails – because California's statutes of limitation do not apply to the claims asserted by Italia under general maritime law.

The court finds that MTC's motion to dismiss must be GRANTED. Italia's claims are not precluded by res judicata, but they are barred by California's relevant statutes of limitations, which, given the choice of law provision, control the instant actions.

Contrary to MTC's assertions, res judicata only bars claims that could have been brought in a prior action if that prior action was decided on the merits. Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992). A dismissal for lack of subject

10

matter jurisdiction is not a final judgment on the merits. See, e.g., Haywood v. Drown, 129 S.Ct. 2108, 2132 (2009); Segal v. American Tel. & Tel. Co., 606 F.2d 842, 844 (9th Cir. 1979). Italia's arbitration against MTC failed because MTC could not be bound to arbitration by a contract to which it was no longer a party. The arbitrators did not decide the claim on its merits and thus, the dismissal does not preclude the instant claims.

Nevertheless, MTC's claims are time-barred. The contract under which MTC performed its stevedoring services and to which Italia claims to be a third party beneficiary (Seaside/MTC) provides that it "shall be construed, interpreted and enforced in accordance with the laws of the State of California without reference to the laws of any other jurisdiction, except to the extent that the laws, rules and regulations of the United States of America shall apply."

With limited exceptions, courts will enforce choice-of-law provisions in maritime contracts. See Chan v. Society Expeditions, Inc., 123 F.3d 1287,1296-97 (9th Cir. 1997). Courts deviate from this rule only when the elected state has "no substantial relationship to the parties or transaction or the state's laws conflict with the fundamental purpose of maritime law." Flores v. American Seafoods Co., 335 F.3d 904, 914 (9th Cir. 2003). Italia does not deny that the contract substantially relates to the State of California or that California's statutes of limitation are relevant under general principles of maritime law. Accordingly, this court will enforce the provision, though the parties dispute its implications.

MTC asserts that the clause exalts California laws above all others. While Italia's opposition fails to offer an alternate interpretation, it addresses an identical provision in response to Seaside's motion to dismiss. There, Italia argues that under a "plain meaning" interpretation, California law applies only when federal law is silent. According to Italia, maritime law is federal law. Therefore, Italia contends that the equitable doctrine of laches, which governs the timeliness of maritime negligence and contract claims, should control.

This court finds both interpretations lacking. While MTC's position reflects the ordinary impact of choice-of-law provisions, this provision is not typical and cannot be treated as such. Indeed, none of the relevant cases cited by MTC or Seaside involved

11

choice of law provisions with qualifying clauses akin to the one at issue here. See, e.g., Chan, 123 F.3d at 1298 ("Ticket and all other rights will be construed in accordance with the general maritime law of the United States."); see also Stark v. Totem Ocean Trailer Express, Inc., 2007 WL 685698 (W.D. Wash, Mar. 1, 2007) ("This Agreement shall for all purposes be governed by and in accordance with the laws of the state of Washington." (emphasis added)). To effectuate MTC's interpretation would be to ignore the provision's plain meaning – that California law controls only in the absence of an applicable law, rule, or regulation of the United States of America.

Nevertheless, the provision does not encompass all legal doctrines that would otherwise apply in maritime cases. The equitable doctrine of laches, for example, is a common law doctrine, not a codified law, rule, or regulation of the United States of America. Indeed, with limited exceptions, maritime law does not include express limitations periods. The court finds that because the provision promotes California law in the absence of an applicable federal law, California statutes of limitations, not laches, control the timeliness of the instant claims.

In California, a claim for negligence must be brought within three years of the alleged incident. Cal. Civ. P. Code § 338. A claim for breach of written contract must be brought within four years. Cal. Civ. P. Code § 337. Therefore, Italia's claims, filed approximately six years after the incident on which they are based, are time-barred and must be dismissed.

D.   Seaside's Motion

Italia asserts two claims against Seaside, one for breach of the Terminal Agreement of which Seaside is an assignee, and one for negligent loading of the Vessel. Like MTC, Seaside argues that the contract calls for the application of California law and that the applicable statutes of limitations bar both claims. Seaside also asserts that the negligence cause of action is inadequately pled.

In response, Italia contends that its claims survive even under California law. Italia asserts that its claims against Seaside are for recovery of amounts paid or to be paid to

discharge liabilities created by Seaside's breach of contract and negligence, and that those indemnity and contribution claims accrued only when Italia paid and settled those liabilities. Thus, Italia argues, the statutes of limitations began running on September 29, 2006 when Italia paid its arbitrated settlement claims to NOAA. Furthermore, Italia argues that both of its claims should be governed by the four-year statute as the "gravamen" of the underlying action is contractual. As such, both claims would be timely.

The court finds that Seaside's motion must be GRANTED. The Terminal Agreement and the Seaside/MTC contract contain identical choice-of-law provisions. Pursuant to those provisions, claims governed by the Terminal Agreement will be controlled by California statutes of limitations. Again, in California, a claim for negligence must be brought within three years of the alleged incident, Cal Civ. P. Code § 338; and a claim for breach of contract, within four years, Cal Civ. P. Code § 337. Because nearly six years elapsed between filing the instant claims and the incident on which they are based, they are time-barred.

Nevertheless, the court finds that the dismissal should be WITH LEAVE TO AMEND the first cause of action. Italia correctly argues that under both maritime and California law, claims for indemnity accrue only when the judgment against the indemnitee has been satisfied. American Roll-on Roll-off Carrier, LLC v. P&O Ports Baltimore, Inc., 479 F.3d 288, 292 (4th Cir. 2007) ("It is well established that a maritime claim for indemnity does not accrue until the indemnitee's liability is fixed by a judgment against or payment by the indemnitee."); Cal. Civ. Code § 2778(2) ("Upon indemnity against claims, or demands, or damages, or costs, expressly, or in equivalent terms, the person indemnified is not entitled to recover without payment thereof."). Therefore, the statute of limitations did not start running until September 26, 2006, when Italia paid its settlement to NOAA. Exxonmobil Oil Corp. v. Nicoletti Oil, Inc., __ F.Supp. 2d __, 2010 WL 2011497 at *6 (E.D. Cal., May 18, 2010) (citing Lincoln v. Narom Development Co., 10 Cal. App. 3d 619, 627 (1970)).

However, Italia conceded at the hearing that the complaint does not specifically plead an indemnity claim. Accordingly, the court will permit Italia to amend the first cause

13

of action to clarify that it seeks recovery from Seaside for breach of contract under an indemnity theory.

The negligence claim remains time-barred. Under the three-year limitations period, the last day to file an indemnity claim based on negligence would have been September 26, 2009, five months before the instant claim was filed. Contrary to Italia's assertions, the "gravamen of the cause of action" rule cannot salvage the negligence claim. When a claim sounds in both contract and tort, this rule allows a plaintiff to elect a theory of recovery and apply the associated statute of limitations. See City of Vista v. Robert Thomas Securities, Inc., 84 Cal. App. 4th 882, 889 (2000). It does not, however, permit Italia to apply the limitations period for its contract cause of action to the negligence cause of action.

Having determined that the negligence claim is time-barred, this court need not determine the substantive sufficiency of the pleadings.

**CONCLUSION**

In accordance with the foregoing, Tricor's motion to dismiss is DENIED because maritime law applies, and the court cannot determine at this stage of the litigation the extent to which the claims against Tricor are barred by the doctrine of laches. MTC's motion is GRANTED, without leave to amend, because under the relevant choice-of-law provision, California's statutes of limitations bar Italia's claims. Seaside's motion is GRANTED for the same reasons, although Italia is granted leave to amend the first cause of action only, to plead a claim for indemnity. The negligence claim against Seaside is dismissed without leave to amend.

The amended complaint shall be filed no later than October 6, 2010. A case management conference will be held on Thursday, October 21, 2010, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: September 7, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge